UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-52-GWU

STEPHEN E. WELLS, PLAINTIFF,

VS.　　　　　　　　**MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.　Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.　Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.　Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-52  Stephen E. Wells

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

08-52 Stephen E. Wells

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

08-52 Stephen E. Wells

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

08-52  Stephen E. Wells

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-52  Stephen E. Wells

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Stephen E. Wells, was found by an Administrative Law Judge (ALJ) to have "severe" impairments as of his Date Last Insured (DLI), consisting of discogenic and degenerative disorders of the back, hypertension, and complaints of nerves.  (Tr. 28, 347).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Wells retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 31-4, 347-53).  The Appeals Council declined to review, and this action followed.

At an administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 43, limited education, and work experience as a coal miner could perform any jobs if he were limited to "light" level exertion, with the option of sitting or standing at will, and also had the following non-exertional restrictions.  (Tr. 495-6).  He: (1) could perform no climbing, stooping, bending, or crawling; (2) could

occasionally push or pull with his left lower extremity; and (3) could perform no work requiring contact with the public or dependent on close interaction with coworkers and supervisors.  (Id.).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.  Mr. Wells' alleged onset date is June 23, 1989, and his DLI was December 31, 1994 (Tr. 72), meaning that he was required to show disability between those two dates in order to be entitled to benefits.

Mr. Wells was shown to have a herniated lumbar disc in a myelogram conducted by Neurosurgeon William Brooks on March 10, 1990.  (Tr. 148).  His treating family physician at the time, Dr. Leslie Karr, completed three insurance forms during the relevant period, on May 14, 1991, December 29, 1992, and December 14, 1993.  All three of the forms indicate that Mr. Wells was incapable of performing even sedentary activity due to a herniated lumbar disc.  (Tr. 196-9, 380-1).  In his first decision, issued in 2001, the ALJ rejected Dr. Karr's 1993 opinion because he felt that the objective evidence cited, namely, limited motion in the lumbar region and subjective reports of tenderness to palpation, did not support the restrictions, and because a finding of "disability" was a finding of fact reserved to the Commissioner.  (Tr. 348-9).  The ALJ did not mention the 1991 or 1992 opinions.

After an Appeals Council remand for an explanation of the weight to be given the opinion evidence (and a suggestion that additional evidence might be requested from the examining source) (Tr. 363), the ALJ issued a new decision, in this case adding a reference to Dr. Karr's May, 1991 opinion, although continuing to overlook the December, 1992 opinion; once again the ALJ simply stated that the physician cited only limited lumbar range of motion and tenderness to palpation. (Tr. 30-1). However, as the plaintiff points out, Dr. Karr's office notes additionally refer to parasthesia and weakness. (Tr. 180-1). Moreover, Dr. Karr had available evaluations from several neurosurgeons who agreed that Mr. Wells had an L4-L5 herniated disc. (Tr. 201).

Additionally, there is evidence from Dr. Bryan Curd, who apparently succeeded Dr. Karr as the plaintiff's personal physician, consisting of office notes indicating a first visit in August, 1994, prior to the DLI. (Tr. 221). On December 8, 1994, Dr. Curd's examination showed a spasm of the paraspinous muscles in the upper lumbar region on the right side, as well as in the lower lumbar region, and he noted scoliosis with the plaintiff's right shoulder "quite a bit depressed when he is standing straight up." (Tr. 220). Mr. Wells could not flex his torso more than 15 degrees and was "hyporeflexic" in both of the lower extremities. (Id.). Dr. Curd completed an insurance form dated February 7, 1995, shortly after the DLI, stating that the plaintiff was being treated for a herniated disc and had been seen by his

08-52 Stephen E. Wells

predecessor at the office for "years" with the same symptoms. (Tr. 339). Like Dr. Karr, Dr. Curd opined that Mr. Wells was incapable of sedentary activity and disabled from any work. (Tr. 340). While the ALJ discussed a subsequent opinion given by Dr. Curd on June 16, 1998,[1] in his first decision (Tr. 349), he apparently never discussed the 1995 opinion, although it is almost contemporaneous with the relevant period and indicates that the plaintiff was unable to work before the DLI (Tr. 339).

As the Sixth Circuit has noted, an ALJ is required to give "good reasons" for rejecting the opinion of a treating physician, and failure to do so is a procedural violation even if the administrative decision is otherwise supported by substantial evidence. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). Although an exception to the Wilson rule may apply if the treating physician's opinion could not possibly be credited by the ALJ, the court has noted that a failure to even mention a treating physician's opinion is not harmless error, since it indicates that the ALJ may have overlooked the evidence. Bowen v. Commissioner of Social Security, 478 F.3d 742, 747-8 (6th Cir. 2007).[2] Accordingly, a remand will be required for additional consideration.

---

[1] The ALJ gave the date as "June 6, 1989," presumably a typographical error.

[2] Dr. Karr and Dr. Curd did opine that the plaintiff was "disabled," but they also limited him to less than sedentary work activity, an exertional restriction which the ALJ should have considered.

08-52 Stephen E. Wells

Furthermore, the ALJ's treatment of the opinion evidence from two neurosurgeons who examined the plaintiff during the relevant period should be reevaluated. Neurosurgeon William Brooks obtained the 1990 myelogram showing the herniated lumbar disc, and noted a limitation of flexion, hyperextension, lateral rotation and lateral bending to 20 percent of normal in a May 10, 1990 report. (Tr. 152). Dr. Brooks provided restrictions of lifting a maximum of 35 pounds, 25 pounds occasionally, and 10 pounds frequently, should "avoid all lifting, bending, twisting, crawling, climbing, and stooping," and added that he could "sit and stand for up to, but not beyond, two hours." (Id.). Dr. Brooks reiterated these restrictions the next month. (Tr. 150). While the ALJ stated in his decision that the sitting and standing limitations were accommodated in the hypothetical question by allowing the plaintiff to sit or stand at will (Tr. 30), there is some ambiguity in the phrasing used by Dr. Brooks which could be consistent with a view that the plaintiff could not sit or stand for a full eight-hour workday. Subsequent to the most recent ALJ decision, the plaintiff returned to Dr. Brooks for another evaluation, and the physician submitted a report to the Appeals Council which included a review of his previous findings and significantly stating that "I remain resolved in my opinion that he is disabled at the present time and has been since 1989." (Tr. 452). While a physician's opinion regarding "disability" is a vocational conclusion to which the defendant is not required to defer, the statement from Dr. Brooks is probative under

08-52 Stephen E. Wells

the present set of facts as an indication that he did not consider the plaintiff capable of gainful work activity at the time he gave his restrictions in 1990.[3] Something of the same ambiguity regarding sitting and standing is also present in the March, 1991 report of a one-time examiner, Dr. David Jackson, who limited the plaintiff as to light level exertion with no standing or sitting for more than one hour. (Tr. 171).

The decision will be remanded for further consideration.

This the 19th day of November, 2008.

Signed By:

*G. Wix Unthank*

United States Senior Judge

---

[3] The court notes that the ALJ's discussion of Dr. Brooks's opinion suggests that his physical findings were inconsistent because a CT scan of the lumbosacral spine suggested a right-sided herniated disc, whereas the plaintiff's symptoms were on the left side. (Tr. 30). It is true that this discrepancy was noted by Dr. Brooks in his initial examination of the plaintiff in February, 1990 (Tr. 153) but the subsequent myelogram confirmed that the herniated disc was on the left side (Tr. 148A). Another contemporaneous examiner, Dr. John R. Johnson, had described the CT scan as "really not helpful" (Tr. 157) and in view of the results of the myelogram, it is dubious to question the credibility of the plaintiff's subjective complaints because of the CT scan results.